# Exhibit B
Post Petition Amendment Agreement

{5446729:}

# AMENDMENT AND RATIFICATION AGREEMENT

The Huntington National Bank (*"Lender"*), Lee Steel Corporation, a Michigan corporation (*"Operating Debtor"*), Taylor Industrial Properties, L.L.C., a Michigan limited liability company (*"Taylor Industrial"*), 4L Ventures, LLC, a Michigan limited liability company (*"4L Ventures"*), and W. Zachary Taylor (*"Mr. Taylor"*) enter into this Amendment and Ratification Agreement on April ___, 2015.

## RECITALS

**A.** Operating Debtor, Taylor Industrial, and 4L Ventures are collectively called the *"Debtors"*. Debtors and Mr. Taylor, in their capacity as guarantors, are collectively called the *"Guarantors"*. Debtors and Guarantors are collectively called the *"Obligors"*.

**B.** Lender, Operating Debtor, and Taylor Industrial are parties to a Credit Agreement dated February 18, 2011, as amended by numerous amendments to the Credit Agreement including, but not limited to, the Nineteenth Amendment to Credit Agreement dated December 18, 2014 (as amended, the *"Pre-Petition Credit Agreement"*).

**C.** Lender made the following loans and financial accommodations available to Operating Debtor and Taylor Industrial under the Pre-Petition Credit Agreement:

1. a $32,000,000 revolving line of credit to Operating Debtor (the *"Revolver"*) evidenced by a Revolving Credit Note dated September 18, 2012, as amended by the Sixteenth Amendment to Credit Agreement and Note Amendment dated January 17, 2014 (as amended, the *"Revolver Note"*);

2. a $1,530,000 term loan to Taylor Industrial (*"Term Loan A"*) evidenced by a Term Loan A Note dated April 18, 2011 (the *"Term Loan A Note"*);

3. a $942,222 term loan to Taylor Industrial (*"Term Loan B"*) evidenced by a Term Loan B Note dated April 18, 2011 (the *"Term Loan B Note"*);

4. a $4,000,000 equipment line of credit to Operating Debtor (the *"Equipment Line of Credit"*) evidenced by an Equipment Line of Credit Note dated August 5, 2011 (the *"Equipment Line of Credit Note"*);

5. a $12,900,000 equipment line of credit to Operating Debtor (the *"Second Equipment Line of Credit"*) evidenced by a Second Equipment Line of Credit Note dated April ___, 2012, as amended by the Eighth Amendment to Credit Agreement and Note Amendment dated October 12, 2012 and the Eighteenth Amendment to Credit Agreement and Note Amendment dated April 21, 2014 (as amended, the *"Second Equipment Line of Credit Note"*); and

6. a $25,000 letter of credit for the benefit of Operating Debtor, payable to the Michigan Department of Environmental Quality (as amended, the *"MDEQ Letter of Credit"*).

**D.** Operating Debtor's and Taylor Industrial's obligations under and in connection with the Pre-Petition Credit Agreement are guaranteed by Operating Debtor, Taylor Industrial, 4L Ventures, and Mr. Taylor in a Guaranty Agreement dated February 18, 2011, as amended by a Joinder Agreement dated October 30, 2012, and a Joinder Agreement dated October 30, 2013 (as amended, the "*Lee Steel / Taylor Industrial Guaranty*").

**E.** Additionally, Lender, 4L Ventures (as borrower), Operating Debtor, and Taylor Industrial (as guarantors) are parties to a Loan Agreement dated October 30, 2012, as amended by a First Amendment to Loan Agreement dated October 30, 2013 (as amended, the "*4L Ventures Loan Agreement*").

**F.** Lender made the following loans and financial accommodations available to 4L Ventures under the 4L Ventures Loan Agreement:

    **1.** a $6,800,0000 construction loan (the "*4L Ventures Construction Loan*") evidenced by a Promissory Note (End Loan) dated June 1, 2014 (the "*4L Ventures Construction Note*");

    **2.** a $4,322,000 term loan (the "*Draw-to Term Loan*") evidenced by a Promissory Note (Draw-to Term Loan) dated June 1, 2014 (the "*Draw-to Term Loan Note*"); and

    **3.** a $376,786.58 letter of credit for the benefit of 4L Ventures, payable to the Michigan Department of Transportation (as amended, the "*MDOT Letter of Credit*").

**G.** 4L Ventures' obligations under and in connection with the 4L Ventures Loan Agreement are guaranteed by (1) Operating Debtor and Taylor Industrial in a Guaranty Agreement dated October 30, 2012; and (2) Mr. Taylor in an Amended and Restated Guaranty Agreement dated October 30, 2012. Theses guaranties are, collectively, the "*4L Ventures Guaranties*", and together with the Lee Steel / Taylor Industrial Guaranty, collectively, the "*Guaranties*".

**H.** The Revolver, Term Loan A, Term Loan B, the Equipment Line of Credit, the Second Equipment Line of Credit, the 4L Ventures Construction Loan, and the Draw-to Term Loan are collectively referred to as the "*Loans*".

**I.** The Revolver Note, the Term Loan A Note, the Term Loan B Note, the Equipment Line of Credit Note, the Second Equipment Line of Credit Note, the 4L Ventures Construction Note and the Draw-to Term Loan Note are collectively referred to as the "*Pre-Petition Promissory Notes*".

**J.** The MDEQ Letter of Credit and MDOT Letter of Credit and all documents executed in connection with the MDEQ Letter of Credit or the MDOT Letter of Credit are collectively referred to as the "*Letter of Credit Documents*".

**K.** The Pre-Petition Obligations (as defined below) are secured by the following documents (collectively, the "*Pre-Petition Security Documents*") on the following collateral

{5445951:3}    2

(together with all other collateral described in the Pre-Petition Security Documents, the "*Pre-Petition Collateral*"):

      **1.**    A Security Agreement dated February 18, 2011 made by Operating Debtor and Taylor Industrial granting Lender a first-priority lien in, among other things, each grantor's present and future accounts, general intangibles, documents, instruments, chattel paper, inventory, equipment, fixtures, deposit accounts, investment property, and all products and proceeds thereof;

      **2.**    A Security Agreement dated October 30, 2012 made by 4L Ventures granting Lender a first-priority lien in, among other things, 4L Ventures' present and future accounts, general intangibles, documents, instruments, chattel paper, inventory, equipment, fixtures, deposit accounts, investment property, and all products and proceeds thereof;

      **3.**    A first-priority lien on Taylor Industrial's real property commonly known as 5875 Weller Ct., Wyoming, Michigan, which was granted under a Mortgage dated February 18, 2011, and recorded on March 1, 2011 at document no. 20110301-0017746 Kent County, Michigan Register of Deeds, as amended by a First Amendment to Mortgage dated October 30, 2012, and recorded on December 11, 2012 at document no. 20121211-0116689 Kent County, Michigan Register of Deeds;

      **4.**    A Security Agreement dated October 30, 2012 made by each Debtor granting Lender a first-priority lien in, among other things, each Debtor's present and future accounts, general intangibles, documents, instruments, chattel paper, inventory, equipment, fixtures, deposit accounts, investment property, and all products and proceeds thereof;

      **5.**    A first-priority lien on 4L Ventures' real property commonly known as 36320 Eureka Rd., Romulus, Michigan ("*Romulus Property*"), which was granted under a Mortgage dated October 30, 2012, and recorded on November 8, 2012 at Liber 50260 Page 1132 Wayne County, Michigan Register of Deeds, executed and delivered by 4L Ventures in Lender's favor; and

      **6.**    An assignment of leases and rentals on the Romulus Property, which was granted under an Assignment of Leases and Rentals dated October 30, 2012, and recorded on November 8, 2012 at Liber 50260 Page 1160 Wayne County, Michigan Register of Deeds, executed and delivered by 4L Ventures in Lender's favor

    **L.**    The Pre-Petition Credit Agreement, the Pre-Petition Promissory Notes, the Letter of Credit Documents, the Lee Steel / Taylor Industrial Guaranty, the 4L Ventures Loan Agreement, the 4L Ventures Guaranties, the Pre-Petition Security Documents, and all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Lender, including, without limitation, all Uniform Commercial Code financing statements, all other security agreements, notes, guaranties, or mortgages, and all other related agreements, documents and instruments executed and/or delivered with these documents, as all of the same have been amended, supplemented, modified, extended, renewed, restated, and /or replaced at

any time before the Petition Date (as defined below), are collectively called the "***Pre-Petition Loan Documents***". Capitalized terms used but not defined in this Agreement have the same meanings as in the Pre-Petition Loan Documents.

**M.** As of the Petition Date, Debtors owed an aggregate principal amount of $50,091,702.35 to Lender under the Pre-Petition Loan Documents (as defined below), consisting of the following:

1. $24,581,533.99 under the Revolver;

2. $1,230,375.00 under Term Loan A;

3. $573,185.05 under Term Loan B;

4. $1,938,391.03 under the Equipment Line of Credit;

5. $11,364,285.70 under the Second Equipment Line of Credit;

6. $6,545,003.00 under the 4L Ventures Construction Loan;

7. $3,858,928.58 under the Draw-to Term Loan;

plus interest accrued and accruing thereon, together with $[401,786.58] in contingent liabilities under the Letter of Credit Documents, all Secured Obligations (as defined in the Pre-Petition Credit Agreement), all costs, fee, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto arising at any time before the Petition Date (collectively, the "***Pre-Petition Obligations***").

**N.** Debtors have commenced a case under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "***Bankruptcy Court***"), and Debtors and Guarantors have retained possession of their respective assets and are authorized under the Bankruptcy Code (as defined below) to continue the operation of their businesses as a debtor-in-possession.

**O.** The Bankruptcy Court has entered a Financing Order (as defined below) under which Lender may make post-petition loans and advances, and provide other financial accommodations, to Operating Debtor secured by substantially all the assets and properties of Debtors as set forth in the Financing Order and the Loan Documents (as defined below).

**P.** The Financing Order provides that, as a condition to the making of such post-petition loans, advances and other financial accommodations, Obligors shall execute and deliver this Agreement.

**Q.** Obligors have requested that Lender make post-petition loans and advances and provide other financial or credit accommodations to Operating Debtor and make certain amendments to the Loan Documents.

**R.** Lender agreed to Obligors' request on the terms in this Agreement and the Financing Order.

## AGREEMENT

Lender and Obligors agree that:

**1. Definitions.** As used in this Agreement, the following terms shall have the following meanings, and each Loan Document is amended to included, in addition and not in limitation, each of the following definitions:

(a) *"Bankruptcy Code"* means the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

(b) *"Chapter 11 Cases"* means the chapter 11 cases of Debtors which are being jointly administered under the Bankruptcy Code and are pending in the Bankruptcy Court.

(c) *"Collateral"* means, collectively, the Pre-Petition Collateral and the Post-Petition Collateral.

(d) *"Credit Agreement"* means the Pre-Petition Credit Agreement, as amended by this Agreement and as ratified, assumed and adopted by Obligors pursuant to the terms of this Agreement and the Financing Order, as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated, or replaced.

(e) *"Financing Order"* means any order or orders authorizing the granting of credit by Lender to Debtors on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Cases.

(f) *"Financing Period"* means the period from the date that the Conditions Precedent are satisfied until the earlier of (x) August 28, 2015, or (y) the date on which an Event of Default (as defined below) occurs.

(g) *"Loan Documents"* means, collectively, this Agreement, the Credit Agreement, and all of the Pre-Petition Loan Documents, as ratified, assumed and adopted by Obligors pursuant to the terms hereof, as amended and supplemented hereby, and the Financing Order, as each of the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated, or replaced.

(h) *"Petition Date"* means the date of the commencement of the Chapter 11 Cases.

(i) *"Obligations"* means, collectively, the Pre-Petition Obligations and the Post-Petition Obligations.

(j) *"Post-Petition Collateral"* means, collectively, all now existing and hereafter acquired real and personal property of each Debtor's estate (except for avoidance actions brought under Section 542, 545, 547, 548, 549, or 550 of the Bankruptcy Code), wherever located, of any kind, nature or description, including any such property in which a lien is granted to Lender pursuant to the Loan Documents, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

    (i)    all of the Pre-Petition Collateral;

    (ii)    all accounts;

    (iii)    all general intangibles, including, without limitation, all intellectual property;

    (iv)    all goods, including, without limitation, all inventory and all equipment;

    (v)    all real property interests and fixtures;

    (vi)    all chattel paper, including, without limitation, all tangible and electronic chattel paper;

    (vii)    all instruments, including, without limitation, all promissory notes;

    (viii)    all documents;

    (ix)    all deposit accounts;

    (x)    all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

    (xi)    all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of accounts receivable and other Collateral, including, without limitation, (1) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (2) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (3) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, accounts receivable or other Collateral, including returned, repossessed and reclaimed goods, and (4) deposits by and property of account debtors or other persons securing the obligations of account debtors;

    (xii)    all (1) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (2) monies, credit balances, deposits and other property of Debtors now or hereafter held or received by or in transit to Lender or its

{5445951:3}    6

15-45784-mbm   Doc 7-4   Filed 04/13/15   Entered 04/13/15 16:01:36   Page 7 of 16

affiliates or at any other depository or other institution from or for the account of Debtors, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

>> (xiii) all commercial tort claims;

>> (xiv) all books and records; and

>> (xv) all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral.

> **(k)** *"Post-Petition Obligations"* means all of each Obligor's present and future obligations and liabilities to Lender and each of Lender's affiliates arising on and after the Petition Date, including the Secured Obligations (as defined in the Credit Agreement), and whether arising on or after the conversion or dismissal of the Chapter 11 Cases, or before, during and after the confirmation of any plan of reorganization in the Chapter 11 Cases, and whether arising under or related to this Agreement, any other Loan Document, by operation of law or otherwise, and whether incurred by Obligors as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor-in-possession facility fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing.

**2. Acknowledgements and Reaffirmation.**

> **(a)** The Recitals are accurate and are incorporated into this Agreement.

> **(b)** Each of the Loan Documents to which an Obligor is a party has been duly executed and delivered to Lender by that Obligor, and each is in full force and effect on the date of this Agreement.

> **(c)** Each Obligor's agreements and obligations in the Loan Documents to which it is a party and in this Agreement constitute the legal, valid and binding Obligations of that Obligor, enforceable against it in accordance with its terms.

> **(d)** The Obligations, including each Guarantor's obligations under the Guaranties, are unconditionally owing to Lender and lender's affiliates without setoff, recoupment, defense, or counterclaim, in law or in equity of any kind or character.

> **(e)** The Obligations are and will continue to be secured by valid, perfected, indefeasible, first-priority liens in Lender's favor in the Collateral, subject only to the liens or encumbrances expressly permitted by the Loan Documents.

> **(f)** This Agreement and the other Loan Documents were entered into in exchange for good and valuable consideration. Each Obligor reaffirms its obligations

{5445951:3} 7

15-45784-mbm    Doc 7-4    Filed 04/13/15    Entered 04/13/15 16:01:36    Page 8 of 16

and duties under the Loan Documents and agrees that the Guaranties guaranty the Obligations to the extent provided, and as limited in, the Guaranties.

**3. Adoption and Ratification.** Each Obligor hereby (a) ratifies, assumes, adopts and agrees to be bound by all of the Pre-Petition Loan Documents to which it is a party and (b) agrees to pay all of the Pre-Petition Obligations in accordance with the terms of such Pre-Petition Loan Documents, as amended by this Agreement, and in accordance with the Financing Order. All of the Pre-Petition Loan Documents are incorporated herein by reference and hereby are and shall be deemed adopted and assumed in full by Obligors, each as Debtor and Debtor-in-Possession as applicable, and considered as agreements between Obligors, on the one hand, and Lender, on the other hand. Obligors hereby ratify, restate, affirm and confirm all of the terms and conditions of the Pre-Petition Loan Documents, as amended and supplemented pursuant hereto and the Financing Order, and Obligors agree to be fully bound by the terms of the Loan Documents to which any Obligor is a party.

**4. Events of Default.** It is an *"Event of Default"* and a default under this Agreement and the other Loan Documents if:

**(a)** an Obligor does not materially comply with any term in this Agreement, the other Loan Documents, or any other present or future agreement between an Obligor and Lender;

**(b)** if any material representation or warranty made in this Agreement or any related agreement was false, misleading, or incorrect in any material respect when made;

**(c)** the occurrence of any condition or event which permits Lender to exercise any of the remedies set forth in the Financing Order;

**(d)** the termination or non-renewal of the financing agreements as provided for in the Financing Order;

**(e)** conversion of any of the Chapter 11 Cases to a chapter 7 case under the Bankruptcy Code;

**(f)** dismissal of any of the Chapter 11 Cases or any subsequent chapter 7 case either voluntarily or involuntarily;

**(g)** the Bankruptcy Court has not entered a final Financing Order acceptable to the Lender before the expiration of the interim Financing Order,;

**(h)** the Financing Order is modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of Lender (and no such consent shall be implied from any other authorization or acquiescence by Lender);

**(i)** the appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

**(j)** if at any time aggregate disbursements vary adversely from the amount provided for in the Budget (as defined below) by more than ten (10) percent, as measured on a cumulative basis beginning April 13, 2015 through the date of calculation;

**(k)** if at any time any Budget Funding is used for purposes other than as set forth in the Budget; or

**(l)** if there is a failure to meet any Milestone (as defined below), other than a failure caused solely by Lender's action or inaction.

**5. Amendments to Loan Documents.** The Loan Documents are amended as follows:

**(a)** The maturity dates of each of the Revolver, Term Loan A, Term Loan B, the Equipment Line of Credit, the Second Equipment Line of Credit, the 4L Ventures Construction Loan, the Draw-to Term Loan, and each Pre-Petition Promissory Note are extended or reduced, as applicable, to the date that the Financing Period ends.

**(b)** During the Financing Period, (i) all interest payments on the Loans must continue to be paid in accordance with the Loan Documents, (ii) all principal payments on the Loans are suspended, (iii) Lender, in its sole discretion, may advance funds to Operating Debtor under the Revolver solely in accordance with the Budget (***"Budget Funding"***). The Obligors represent and warrant that (w) they will fully cooperate with Lender in implementing the Budget and the terms of this Agreement, (x) they will use the Budget Funding only in the amounts, and solely for the purposes, set forth in the Budget, (y) all billings that Debtors expect to bill or collect, and all expenses they expect to incur, through August 30, 2015 are set forth on the Budget, and (z) Debtors will use their best efforts to implement the Budget.

**(c)** During the Financing Period, each Debtor agrees not to make or commit itself to make (i) any distribution to or for the benefit of its shareholders or members, or (ii) any payment of any kind to or for the benefit of any shareholder, member, director, or affiliate, or any family member of any of the foregoing, at any time, except for (x) payments of base salary to Mr. Taylor, Thomas E. Taylor, and Zachary Scott Taylor, in connection with such persons' employment at Operating Debtor, in an aggregate total amount for all such persons not to exceed $325,000 on an annual basis, prorated and paid over the period of service of such persons, to be allocated in a manner determined by the Debtors, and (y) payments of "triple net" rent by Operating Debtor to Novi Ventures, LLC, in each case solely in connection with Operating Debtor's lease from Novi Ventures, LLC of the real property commonly known as 45525 Grand River Ave., Novi, MI 48374, in an aggregate total amount not to exceed $10,000 base rent per month plus all applicable real property taxes and insurance for such property.

**(d)** The outstanding principal balance of all Obligations under the Revolver may not at any time exceed the lesser of (1) the Line Cap or (2) the Post-Petition Borrowing Base.

(i) ***"Line Cap"*** means $30,000,000.

(ii) *"Post-Petition Borrowing Base"* means, as of any date, an amount equal to:

(A) 85% of the value of Eligible Accounts (other than Eligible Mexican Accounts); plus

(B) the lesser of (1) $1,500,000 and (2) 65% of the value of Eligible Mexican Accounts; plus

(C) the lesser of: (1) $23,000,000, or (2) 65% of the value of Eligible Inventory; plus

(D) $4,600,000; plus

(E) the Operational Out of Formula; less

(F) the MDOT LC Amount; less

(G) the Borrowing Base Reserve established from time to time by the Lender.

(iii) *"Operational Out of Formula"* means the following amounts as of the following periods:

| Period | Operational Out of Formula for such Period |
|---|---|
| Week ended 4/19/15 | $966,134 |
| Week ended 4/26/15 | $396,026 |
| Week ended 5/3/15 | $279,557 |
| Week ended 5/10/15 | $0 |
| Week ended 5/17/15 | $38,352 |
| Week ended 5/24/15 | $877,319 |
| Week ended 5/31/15 | $1,317,663 |
| Week ended 6/7/15 | $1,473,029 |
| Week ended 6/14/15 | $1,320,195 |
| Week ended 6/21/15 | $1,872,561 |
| Week ended 6/28/15 | $1,631,443 |
| Week ended 7/5/15 | $1,967,070 |

6. **Chief Restructuring Officer.** Obligors retained Laura Marcero of Huron Consulting Group (*"Huron"*) to act as their financial consultant and chief restructuring officer (the *"Chief Restructuring Officer"*) under an engagement letter dated January 27, 2015, as amended by the letter dated March 31, 2015 (as amended, the *"Engagement Letter"*). Obligors must at all times continue to employ the Chief Restructuring Officer, or such other financial consultant acceptable to the Lender, under the scope of duty in the Engagement Letter. Among other duties, the Chief Restructuring Officer shall be responsible for monitoring the Budget, preparing, reviewing, and approving all financial reporting provided to the Lender under this Agreement and the other Loan Documents, and all disbursements made by the Debtors must be

approved by the Chief Restructuring Officer. The Chief Restructuring Officer is authorized and directed to communicate directly with Lender on a weekly basis, or such other period as requested by Lender, regarding each Debtor's financial and operational condition and status, financial reports, and other matters related to Debtors as Lender may request. Obligors must at all times cause the Chief Restructuring Officer to cooperate with Lender by responding to Lender's requests for information and providing Lender with the Chief Restructuring Officer's analysis regarding any of the matters in this paragraph.

7. **Budget.** To enable Debtors to meet their working capital needs while the Chapter 11 Cases continue, the Obligors and the Chief Restructuring Officer have developed and presented to Lender a proposed budget (the *"Budget"*), a copy of which is attached to this Agreement as **Exhibit A**, for the period commencing on April 13, 2015 through August 30, 2015.

8. **Investment Banker.** In addition to the retention of the Chief Restructuring Officer, Obligors have requested Lender's consent to engage Huron to serve as the Debtors' investment banking firm (the *"Investment Banker"*). Lender hereby consents to the retention of Huron as Debtors' Investment Banker, provided that such retention shall be under an engagement letter pursuant to terms and conditions acceptable to the Lender. Obligors must at all times continue to employ the Investment Banker, or such other investment banking firm acceptable to the Lender, under an engagement letter pursuant to terms and conditions acceptable to the Lender. Among other duties, the Investment Banker shall be responsible for evaluating all strategic options available to the Obligors and making a recommendation to the Obligors based on the results of the evaluation. The Investment Banker is authorized and directed to communicate directly with Lender on a weekly basis, or such other period as requested by Lender, regarding each Debtor as Lender may request. Obligors must at all times cause the Investment Banker to cooperate with Lender by responding to Lender's requests for information and providing Lender with the Investment Banker's analysis regarding any of the matters related to their engagement.

9. **Milestones.** The Obligors and Lender have agreed it is in the best interest of the Debtors to consummate a sale of all or substantially all of the Debtors' assets as expeditiously as commercially practicable, including meeting the following sale milestones (each, a *"Milestone"*):

    **(a)** Entry of an order approving sale and bid procedures on or before July 13, 2015;

    **(b)** Conclusion of an auction of all or substantially all of the Debtors' assets on or before August 11, 2015;

    **(c)** Entry of an order approving the sale in form and substance acceptable to the Lender on or before August 14, 2015; and

    **(d)** Consummation of the sale on or before August 28, 2015.

10. **Additional Reporting.** In addition to the reports and information required by the Loan Documents, each Obligor must provide Lender with:

**(a)** Weekly (i) calculations of the Post-Petition Borrowing Base, and (ii) actual cash flow reports for the Budget, together with an actual to budget comparison including, without limitation, a variance calculation for disbursements, as described above, in each case by Noon (Eastern Time) on every Wednesday as of the end of the preceding week; and

**(b)** Any additional information that Lender requests.

**11. Grant of Security Interest; Certain Remedies.**

**(a)** As collateral security for the prompt performance, observance and payment in full of all of the Obligations (including the Pre-Petition Obligations and the Post-Petition Obligations), each Debtor, individually and as Debtor-in-Possession, and hereby grants, pledges and assigns to Lender, and also confirms, reaffirms and restates the prior grants to Lender of, continuing security interests in and liens upon, and rights of setoff against, all of the Collateral.

**(b)** When an Event of Default occurs the Financing Period ends automatically without further notice or action. When the Financing Period ends (whether through an Event of Default occurring or passage of time): (1) no further loans may be requested by Operating Debtor under the Revolver, (2) pursuant to the terms of the Financing Oder, the Debtors' authorization to use cash collateral ends, (3) all Obligations are immediately due and payable, subject to the terms and conditions of the Financing Order; and (4) Lender may, subject to the terms and conditions of the Financing Order, exercise its rights and remedies under this Agreement, the other Loan Documents, and applicable law. All of Lender's rights and remedies are cumulative. All of Obligors' Obligations, including those arising under the Loan Documents and this Agreement, continue after the Financing Period ends.

**(c)** No termination of the Financing Period or acceleration of any Obligation relieves or discharges any Obligor of its duties, covenants, and obligations under the Loan Documents (including this Agreement).

**12. Loan Documents and Guaranties Continue; Reservation of Rights.**

**(a)** Except as expressly and specifically amended by this Agreement, all other terms of the Loan Documents remain in full force and effect and are ratified and confirmed.

**(b)** Nothing in this Agreement prejudices Lender's rights and remedies under the Loan Documents or applicable law.

**13. Certain Guaranty Issues.** Each Guarantor's obligations under its Guaranties are unconditional, irrespective of (i) Lender's failure to attempt to collect the Obligations or realize on the Collateral; (ii) any waiver or consent by Lender with respect to the Loan Documents; (iii) Lender's election of the application of Section 1111(b)(2) of the Bankruptcy Code; (iv) any borrowing, grant of a security interest, or use of cash collateral under the Bankruptcy Code; or (v) the disallowance, under Section 502 of the Bankruptcy Code or otherwise of all or any

portion of Lender's claim(s) for repayment of the Obligations. Each Guarantor further represents and warrants that it has no defenses or claims against Lender that would or might affect the enforceability of its Guaranty, and that its Guaranty remains in full force and effect.

**14. Conditions Precedent.** Lender's obligations under this Agreement are not effective or enforceable until each of the following conditions precedent (the *"Conditions Precedent"*) have been satisfied to Lender's satisfaction:

**(a)** The Bankruptcy Court shall have entered an interim Financing Order authorizing the Debtors to obtain the secured financing on the terms and conditions set forth in this Agreement and the other Loan Documents.

**(b)** Lender receives a fully executed original of this Agreement and all Exhibits.

**15. Entire Agreement, Etc.**

**(a)** This Agreement is Obligors' and Lender's entire agreement on this subject. There are no written or oral representations or understandings that are not fully expressed in this Agreement. Only written modifications or amendments to this Agreement that are signed by Lender and Obligors are effective.

**(b)** This Agreement is governed by Michigan law, without regard to conflicts of law principles. This Agreement is binding on Lender, Obligors, and their respective successors, assigns, heirs, and personal representatives.

**(c)** This Agreement may be executed in counterparts with the same effect as if all signatories signed the same document. All counterparts must be construed together as one instrument. Facsimile signatures and electronic signatures sent in PDF format are treated as originals.

**(d)** References to the Loan Documents mean the Loan Documents as amended by this Agreement. If there is an express conflict between the terms of this Agreement and the terms of the other Loan Documents, the terms of this Agreement control.

**(e)** Each Obligor acknowledges that (1) it has fully read this Agreement; (2) it has been given the opportunity to consult with counsel and other advisors; (3) it is entering into this Agreement and the other Loan Documents in its business judgment, knowingly and voluntarily, and without duress, coercion, unlawful restraint, intimidation or compulsion; and (4) it is not relying on Lender's or its agent's opinions or advice in entering into the Loan Documents, or in other matters.

**(f)** Each person executing this Agreement in a representative capacity represents that it has the authority to execute this Agreement and bind the entity it represents.

[*Remainder of Page Intentionally Left Blank – Signature Page Follows*]

Debtors:

**LEE STEEL CORPORATION**

By:_____
Name:_____
Title:_____

**TAYLOR INDUSTRIAL PROPERTIES, L.L.C.**

By:_____
Name:_____
Title:_____

**4L VENTURES, LLC**

By:_____
Name:_____
Title:_____

Lender:

**THE HUNTINGTON NATIONAL BANK**

By:_____
Name:_____
Title:_____

_____
**W. ZACHARY TAYLOR**

Exhibits:    **A – Budget**