UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEE STEEL CORPORATION. *et al.*[1] | ) | Case No. 15-45784-mbm |
| | ) | |
| Debtors. | ) | |
| | ) | Judge Marci B. McIvor |
| | ) | |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE AUCTION SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND TRANSFERRING LIENS TO PROCEEDS; (B) SCHEDULING AN AUCTION AND A SALE HEARING TO CONSIDER APPROVAL OF SALE; (C) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; (D) APPROVING THE FORM OF ASSET PURCHASE AGREEMENT, FORM AND MANNER OF THE AUCTION NOTICE, THE FORM OF THE NOTICE TO NON-DEBTOR CO-PARTIES TO EXECUTORY CONTRACTS, AND THE NOTICE OF THE SALE HEARING**

This matter having come before the Court upon the *Debtors' Motion pursuant to sections 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 6004 and 9014 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Local Rules</u>") (a) Establishing Bidding Procedures for the Auction Sale of Substantially all of Debtors' Assets Free and Clear of Liens, Claims and Encumbrances and Transferring Liens to Proceeds; (b) Scheduling an Auction and a Sale Hearing to Consider Approval of Sale; (c) Establishing Procedures for the Assumption and Assignment of Executory Contracts; (d) Approving the Form of Asset Purchase Agreement,*

---

[1] Debtors include Lee Steel Corporation, Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm, and 4L Properties, LLC, Case No. 15-45788-mbm.

*Form and Manner of the Auction Notice, the Form of the Notice to Non-debtor Co-parties to Executory Contracts, and the Notice of the Sale Hearing*, filed at Docket # 85 (the "Motion").

After service of a Notice and Opportunity to Object Pursuant to L.B.R. 9014-1, all objections to the relief requested in the Motion having been resolved, no further notice or hearing on Debtors' requested relief being necessary or required; and the Court being fully advised in the premises;

**The Court finds that:**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The statutory bases for the requested relief are §§ 105(a), 363 and 1129 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. and FED. R. BANKR. P. 2002 and 6004. This is a "final" order within the meaning of 28 U.S.C. § 158(a). To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

A. Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Motion.

B. On May 12, 2015 [at Docket #125], pursuant to the Stipulation of the Debtors, The Huntington National Bank ("Lender"), and the Official Committee of Unsecured Creditors ("UCC"), this Court entered its *Final Order (A) Authorizing Debtors to Obtain Interim Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. §362; and (C) Authorizing Debtors to Enter into Agreements with the Huntington National Bank* (the "<u>Financing Order</u>").

C. The proposed procedures for the sale of the Purchased Assets are in accordance with the Financing Order.

D. Pursuit of the proposed sale of the Purchased Assets, as set forth in the Motion, is in the best interests of Debtors, their creditors and their estates. The Purchased Assets include all tangible and intangible assets and personal property owned by Debtors and used to operate and conduct the Debtors' business operations as a whole or, alternatively, may consist of the assets used to operate and conduct Debtors' business operations from the Romulus Facility, or the Wyoming Facility individually. Excluded Assets include, without limitation, all executory contracts and unexpired leases that are not assumed and assigned to the Purchaser under section 365 of the Bankruptcy Code; certain claims and causes of action against third parties, including all Chapter 5 Avoidance Actions (as defined in the Financing Order); any Objection(s) (as defined in the Financing Order) brought by the UCC; and any and all other state law fraudulent transfer and similar causes of action and any claims against Debtors' equity owners, officers,

directors, employees, agents, representatives or professionals; bank accounts; cash and cash equivalents; tax refunds; and life insurance policies, as well as the proceeds of all of the foregoing Excluded Assets.

F. Adequate and proper notice for request of the relief granted herein was given and no further notice is necessary.

G. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052, made applicable to this proceeding pursuant to FED. R. BANKR. P. 9014.

*NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:*

1. The Motion is GRANTED to the extent of the relief contained herein, and all objections in connection with the relief contained herein are overruled.

**Bidding Procedures**

2. The Auction is scheduled for August 11, 2015 at 9:00 a.m. at the offices of McDonald Hopkins PLC, 39533 Woodward Ave., Suite 318, Bloomfield Hills, Michigan, 483047 and the Sale Hearing is scheduled for August 12, 2015 at 9:30 a.m., or as soon thereafter as counsel may be heard, before this Court. This Order is without prejudice to Debtors' rights to seek confirmation of a Plan of Reorganization.

3. Debtors have contacted a broad range of potential purchasers of Debtors' assets on a going concern basis, including both strategic and financial buyers within and outside of the steel industry, as well as other parties expressing an interest in purchasing the Purchased Assets, and are actively engaged in the pursuit of prospective Buyers for the Purchased Assets. The Debtors will provide the UCC and Lender with updates summarizing the status of the sale process, the identities of Potential Bidders and Qualified Bidders, and summaries of the material

{5537885:}	4

15-45784-mbm    Doc 175    Filed 06/09/15    Entered 06/09/15 13:56:26    Page 4 of 19

terms of each of the prospective Qualified Bids submitted pursuant to paragraph 10 below, and will confer with the UCC's professionals and Lender at least once per week to advise them of the status of the sale process. Upon the reasonable request of UCC or Lender, Debtors will provide the requesting party with a complete copy of a Qualified Bid.

4. The form of Proposed Purchase Agreement filed at Docket # 173 is approved for purposes of the Bidding Procedures only.

5. In order to qualify to be the Stalking Horse, an offeror must be a Qualified Bidder and, by 5:00 P.M. prevailing Eastern Time on July 2, 2015, submit to Debtors' representatives identified in paragraph 10.(i) below a purchase agreement substantially in the form of the Proposed Purchase Agreement, containing the following pertinent provisions (the "Stalking Horse Purchase Agreement"), and be acceptable to Debtors, after consultation with the UCC and Lender:

    A. A cash purchase price for the Purchased Assets, including a cash payment for all of Debtors' inventory, payable in full at closing, and the assumption of certain contracts and leases and the assumption of certain liabilities.

    B. The Stalking Horse Purchase Agreement must be accompanied by an earnest money deposit equal to ten percent (10%) of the cash portion of the purchase price (the purchase price to be paid at Closing) to be held by Debtors' counsel or an escrow agent acceptable to the Debtors. The deposit will be applied against the purchase price if the Stalking Horse is the successful purchaser of the Purchased Assets. If the sale is not consummated on account of the Stalking Horse's failure to perform any of its obligations under the Stalking Horse Purchase Agreement, Debtors will

retain the earnest money deposit. If the Stalking Horse is not in breach of the Stalking Horse Purchase Agreement, it will be entitled to return of the deposit if (i) the Purchased Assets are sold to another purchaser and the sale closes (ii) the sale is not consummated on account of Debtors' failure to perform under the Stalking Horse Purchase Agreement, or (iii) the sale is not consummated because certain contingencies to closing in the Stalking Horse Purchase Agreement were not timely satisfied by Debtors or deemed waived by the passage of time pursuant to the Stalking Horse Purchase Agreement.

C. The Purchased Assets include all tangible and intangible assets and personal property owned by Debtors and used to operate and conduct the Debtors' business operations as a whole or, alternatively, may consist of the assets used to operate and conduct Debtors' business operations from the Romulus Facility or the Wyoming Facility individually, as well as assets located at the Debtors' leased offices in Novi, Michigan. Excluded Assets include, without limitation, all executory contracts and unexpired leases that are not assumed and assigned to the Purchaser under section 365 of the Bankruptcy Code; certain claims and causes of action against third parties, including all Chapter 5 Avoidance Actions (as defined in the Financing Order); any Objection(s) (as defined in the Financing Order) brought by the UCC; any and all other state law fraudulent transfer and similar causes of action and any claims against Debtors' equity owners, officers, directors, employees, agents, representatives or professionals;

bank accounts; cash and cash equivalents; tax refunds; and life insurance policies, as well as the proceeds of all of the foregoing Excluded Assets.

D. Closing will occur and conclude on or before August 28, 2015.

E. The Stalking Horse will not assume any employee benefit programs, except those mandated by Debtors' collective bargaining agreements.

F. Subject to Bankruptcy Court approval, Debtors may be obligated to pay a "break-up fee" of up to $500,000.00 to the Stalking Horse to compensate it for its documented reasonable out-of-pocket expenses in conjunction with conducting due diligence and pursuing the purchase of Debtors' assets at the Auction (as defined below) with the proposed sale (the "<u>Break-up Fee</u>").

G. The Stalking Horse must agree to be a Stand-By Bidder as set forth in paragraph 32 of the Motion, unless this provision is waived by Debtors, after consultation with the UCC and Lender, in which case the requirements of paragraph 32 of the Motion shall be waived for all Qualified Bidders.

H. The Stalking Horse's obligations under the Stalking Horse Purchase Agreement may be subject to certain contingencies, including (i) environmental due diligence, and (ii) financial due diligence; <u>provided, however,</u> these contingencies will be deemed waived if not exercised by written notice to Debtors ten (10) calendar days before the Auction (defined below).

6. No later than two (2) business days after the Debtors select a Qualified Bidder to be the Stalking Horse, the Debtors shall notify all parties then expressing an interest in the purchase of all of the Debtor's assets at the Romulus Facility, the Wyoming Facility, or both Facilities of the selection of a Stalking Horse and shall provide each such party with a copy of the Stalking Horse Purchase Agreement.

7. Bidders desiring to bid (the "Potential Bidders") on the Purchased Assets, whether as a Stalking Horse or at the Auction, must execute a confidentiality agreement reasonably acceptable to Debtors before being provided access to any information regarding Debtors.

8. A "Qualified Bidder" means a Potential Bidder that demonstrates, to the reasonable satisfaction of Debtors, that it possesses the financial capability, business plan and management structure to close the acquisition of the Purchased Assets. Notwithstanding the foregoing, the Lender shall be a Qualified Bidder for all purposes.

9. Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below). Debtors are not responsible for, and will bear no liability with respect to, the accuracy of any information obtained by any Qualified Bidder in connection with the sale of the Purchased Assets.

10. Debtors will consider only Qualified Bids from Qualified Bidders. To be a "Qualified Bid", the bid must, unless waived by Debtors, after consultation with the Lender and the UCC, among other things:

(i) be submitted to Debtor's counsel, Stephen M. Gross, Esquire, McDonald Hopkins PLC, 39533 Woodward Ave., Suite 318, Bloomfield Hills MI 48324; Laura A. Marcero, CRO of the Debtors, Huron Consulting Services, LLC 900 Wilshire Drive, Suite 270, Troy, Michigan 48084, and Jamie Lisac, Huron Consulting Services, LLC 500 W. Van Buren Street, Chicago, Illinois 60607; by no later than 5:00 p.m. (prevailing Eastern time) August 4, 2015 (the "Bid Deadline");

(ii) be accompanied by (A) a duly executed asset purchase agreement that is marked to reflect variations from either the Stalking Horse Purchase Agreement, if any, or the Proposed Purchase Agreement filed at Docket # 173; (B) a letter stating that the bidder's offer is irrevocable until the conclusion of the Sale Hearing and acknowledging and agreeing to be bound by the Stand-by Provision as set forth in paragraph 32 of the Motion and paragraph 21 below; (C) written evidence of such bidder's commitment for financing for the full amount of the purchase price (without contingencies) or other evidence of such bidder's ability to consummate the transaction satisfactory to the Debtors, after consultation with Lender and the UCC; and (D) an earnest money cash deposit at least equal to ten percent (10%) of the cash portion of the purchase price, which deposit shall not be subject to any liens or encumbrances created in favor of any person or entity, and which shall be applied to the purchase price if the Qualified Bidder becomes a Successful Bidder (as defined below) or forfeited to Debtors if such Qualified Bidder defaults under the Qualified Bidder's proposed Purchase Agreement or Stalking Horse Purchase Agreement. The deposit of the Second Highest Bidder (as defined below) shall otherwise be returned on or before the date that is five (5) business days after the closing of a sale to the Successful Bidder (as defined below), and all other deposits shall be returned to all other Qualified Bidders in accordance with paragraph 22 below;

(iii) be, in the Debtors' sole discretion, after consultation with the Lender and the UCC, on terms no less favorable (and no more burdensome or conditional) to Debtors than the terms of the Proposed Purchase Agreement or the Stalking Horse Purchase Agreement, if any, with a purchase price satisfying subparagraph (vii) below;

(iv) not include any contingencies relating to due diligence, financing, environmental or labor issues, customer or supplier contracts, or any other material conditions precedent to the bidder's obligation to close, that exist as of the Auction, and that are not contained in the Proposed Purchase Agreement or the Stalking Horse Purchase Agreement, if any;

(v) designate the assets of Debtors subject to the Bid and the executory contracts and unexpired leases that the bidder will request Debtors to assume and assign to the Qualified Bidder accompanied by evidence of adequate assurance of future performance supplied by the Qualified Bidder as to any executory contracts which the Qualified Bidder designates for assumption and assignment.

(vi) be made by one or more bidders, each of which can demonstrate to the satisfaction of Debtors, after consultation with Lender and the UCC that, individually or in the aggregate, it is (or they are) financially able to consummate the transaction contemplated by such bid(s) on the terms contemplated therein; and

(vii) a bid for all of the Purchased Assets at all Facilities, or a combination of bids for the assets at individual Facilities must aggregate to a purchase price at least equal to the purchase price reflected in the Stalking Horse Purchase Agreement, if any, plus $550,000.00.

11. Any credit bid by the Lender for substantially all of the Purchased Assets shall be deemed to be a Qualified Bid subject to section 363(k) of the Bankruptcy Code, and this Order shall not impair and is without prejudice to (a) the Lender's right to credit bid for the Purchased Assets, and (b) the UCC's Objection rights under the Financing Order and any UCC objection related to the Lender's credit bid in connection with the sale of the Purchased Assets to be approved by this Court.

12. If one or more Qualified Bids (other than that of the Stalking Horse, if any) have been received by the Bid Deadline, Debtor shall conduct an auction (the "Auction") with respect

to the Purchased Assets. The Auction shall commence at 9:00 a.m. on August 11, 2015 at the offices of McDonald Hopkins PLC, counsel to Debtors.

13. If there is a Stalking Horse, and in the event that Debtors do not receive another Qualified Bid by the Bid Deadline, Debtors shall proceed with the sale to the Stalking Horse under the terms and conditions of the Stalking Horse Purchase Agreement, subject to the approval of the Court at the Sale Hearing, and shall not conduct the Auction. In the event that there is no Stalking Horse, and none of the Qualified Bids are acceptable to the Debtors, after consultation with Lender and the UCC, Debtors may terminate the Auction prior to bidding.

14. Only the Stalking Horse, if any, and those Qualified Bidders who submitted Qualified Bids will be allowed to participate in the Auction.

15. Debtors, after consulting with the UCC and Lender, prior to the Auction, will determine in their business judgment whether a potential bidder is a Qualified Bidder (other than the Stalking Horse which shall be deemed a Qualified Bidder for all purposes) with a Qualified Bid, and shall notify each Qualified Bidder with a Qualified Bid of the time and place of the Auction, as well as the existence and terms of a Stalking Horse Purchase Agreement, if any.

16. Each Qualified Bidder must appear in person at the Auction or through a duly authorized representative, unless alternative arrangements acceptable to the Debtors are made in advance with Debtors. Lender, UCC, and their respective counsel may also attend the Auction.

17. Each Qualified Bidder, as a consequence of submitting a bid, shall be deemed to acknowledge (i) that it understands and is bound by the Bidding Procedures and the other terms of this Order, including the Stand-By Provision; (ii) that it had an opportunity to inspect and examine the Purchased Assets and the existing contracts and to review all pertinent documents and information with respect to such Purchased Assets before making its offer, and that each

Qualified Bidder relied solely on that review and upon its own investigation and inspection in making its bid; (iii) that the Qualified Bidder is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether express or implied, by operation of law or otherwise, made by any person or party, including Debtors, Lender, the UCC, their respective agents or representatives regarding Debtors, their business or its assets, these Bidding Procedures or the completeness of any information provided in connection therewith; and (iv) that it submits its own bid of its own volition and with full knowledge of the potential consequences.

18. The Debtors shall, in advance of the Auction provide the Lender and the UCC with a detailed estimate of the financial impact on their estates of the executory contracts and leases to be assumed or rejected pursuant to the terms of each Qualified Bid, including the Stalking Horse Bid.

19. Debtors may conduct the Auction in the manner they determine will result in the highest, best or otherwise financially superior offer. Bidding at the Auction will commence with the highest Qualified Bid determined by Debtors, after consultation with the Lender and the UCC, which shall serve as the lead bid (the "Baseline Bid"), and will continue in increments of $50,000.00 or a multiple thereof (the "Incremental Bid Amount"), provided, however for bids on the assets of Debtor's individual facilities, the Incremental Bid Amount shall be in increments of $25,000 for each facility; further provided, that if there is a Stalking Horse, then the first overbid or the combined bids on Debtor's individual facilities on a facility by facility basis must be at least $550,000.00 greater than the bid contained in the Stalking Horse Purchase Agreement. Qualified Bidders that have submitted a Qualified Bid, including the Stalking Horse, may submit bids at the Auction, and may increase or modify bids in accordance with the Incremental Bid

Amount to make their bid more favorable to Debtors. Bidding will continue until such time as the Qualified Bidder with the highest and best offer for the purchase of the Purchased Assets (the "Successful Bid") is determined by Debtors, in consultation with Lender and the UCC (the "Successful Bidder"). However, if there is no Stalking Horse, or the Stalking Horse has not waived all contingencies in the Stalking Horse Purchase Agreement ten (10) business days prior to the Auction, Debtors reserve the right to terminate the Auction at the conclusion of bidding if the offers from the Qualified Bidders are not acceptable to Debtors, after consultation with the UCC and Lender. Debtors shall announce at the Auction the Successful Bidder and the Qualified Bidder that submitted the next highest or otherwise best Qualified Bid (the "Second Highest Bidder").

20. At the conclusion of the Auction and prior to the Sale Hearing, the Successful Bidder and Debtors will enter into a purchase agreement reflecting the Successful Bid (the "Successful Bidder Purchase Agreement"), which shall be subject to Court approval at the Sale Hearing, and the Second Highest Bidder shall revise its Asset Purchase Agreement to reflect its most recent bid.

21. For the purpose of determining the Successful Bidder, the full amount of the Break–Up Fee (defined below) potentially payable to the Stalking Horse, if any, shall be added to any overbid submitted by the Stalking Horse.

22. Debtors shall either seek approval of the Stalking Horse Purchase Agreement, if any, if there are no other Qualified Bids, or shall seek approval of the Successful Bidder Purchase Agreement from the Court at the Sale Hearing.

23. Subject to Court approval in the Sale Order following the Sale Hearing, if such Successful Bidder fails to consummate the approved Sale, the Second Highest Bidder shall be

{5537885:}                                            13
15-45784-mbm    Doc 175    Filed 06/09/15    Entered 06/09/15 13:56:26    Page 13 of 19

deemed to be the Successful Bidder, and Debtors shall be authorized to consummate the sale with the Second Highest Bidder without further order of the Bankruptcy Court, and such Second Highest Bidder shall be required to consummate the Sale on the terms of the Second Highest Bidders' most recent bid (the "Stand-by Provision") as soon as practical. The Stand-by Provision can be waived by Debtor after consultation with the UCC and Lender.

24. If a Qualified Bidder is not the Successful Bidder or the Second Highest Bidder as determined by the court at the Sale Hearing, the unsuccessful Qualified Bidder may elect to keep its offer open through ten (10) days after the Closing Date; otherwise the Deposit will be returned to such Qualified Bidder within five (5) business days after the Auction. Subject to Court approval in the Sale Order, in the event the sale to the Successful Bidder is not consummated within the time established in the Successful Bidder Purchase Agreement and, in the event a sale to the Second Highest Bidder is not timely consummated, Debtors would have the right to accept the next Qualified Bid and consummate the sale with the maker of the next Qualified Bid after consultation with Lender and the UCC and without further order of this Court. In the event that (a) there is a Stalking Horse and it has waived all contingencies to closing ten (10) business days prior to the Auction; (b) the Court approves the sale of a substantially all of the Purchased Assets to a person or persons other than the Stalking Horse and such sale is ultimately consummated (to a purchaser which is not affiliated with the Stalking Horse); (c) the purchaser pays the purchase price required under the Successful Bidder Agreement; and (d) the Stalking Horse is not in breach of the Stalking Horse Purchase Agreement, then Debtor shall pay to Stalking Horse from the sale proceeds only, in consideration of the reasonable expenses incurred by the Stalking Horse in pursuing the transactions contemplated by the Stalking Horse Purchase Agreement, the Break-Up Fee in a sum equal to

the Stalking Horse's documented reasonable out-of-pocket costs, including professional fees incurred in due diligence, negotiation and other items, as determined by Debtor, Lender, and the UCC up to a maximum of $500,000.00 in immediately available funds. The Court shall determine any disputes with respect to the reasonableness and payment of the Break-Up Fee. Said payment shall be made within five (5) business days after receipt of the sale proceeds and either consent by the Debtors, Lender, and the UCC or final order of the Court.

25. In the event of a dispute between the Debtors, the Lender or the UCC regarding the Debtors' obligation under this Order to consult with the Lender or the UCC, the Debtors, the UCC or the Lender may request and the Court shall schedule an expedited hearing on one (1) day's notice to resolve such disputes, which hearings may be held telephonically.

**Procedures for Assumption and Assignment of
Executory Contracts and Objection Deadline**

26. Debtors will provide all Qualified Bidders with a list and a copy of all contracts and leases related to the Purchased Assets, along with proposed cure amounts owing on each contract and lease (the "Cure Schedule"). Each Qualified Bidder must provide with their Qualified Bids to Debtors a list of the contracts and leases that it would like Debtors to assume and assign to the Qualified Bidder (the "Assumed Contracts and Assumed Leases") (together, the "Contract Lists").

27. The following procedures are hereby approved for the assumption and assignment of Assumed Contracts and Assumed Leases ("Assumption and Assignment Procedures"):

    A.    Three (3) business days after the entry of the this Order, Debtors shall serve on the counterparties to the contracts on the Contract Lists a notice

(the "Assumption and Assignment Notice") in the form attached as Exhibit D to the Motion, which is hereby approved, containing the following information:

(i) Debtors' intent to assume and assign the Assumed Contracts and Assumed Leases to the Stalking Horse or a Successful Bidder;

(ii) The Cure Schedule (as supplemented pursuant to the procedure described below);

(iii) The cure amount Debtors propose to pay to each counterparty in compliance with the key requirements of Section 365 of the Bankruptcy Code (the "Pre-Petition Cure Amount");

(iv) That the counterparties to the Assumed Contracts and Assumed Leases shall file and serve any objections to the assumption and assignment of the Assumed Contracts and Assumed Leases or the Pre-Petition Cure Amount on or before the Assumption/Assignment Objection Deadline, as described below; and

(v) That for each Assumed Contract and Assumed Lease for which an objection is timely received, a hearing will be held at the Sale Hearing, or such other date as the Court may designate, upon twenty-four (24) hours' telephonic, electronic or facsimile notice to the objecting party; provided, however, that if the Assumed Contracts and Assumed Leases that are the subject of objections are assumed and assigned prior to the time of the hearing, the cure amount asserted by the objecting party or such other amount as may be agreed to by the parties or fixed by the Court, will be held in a segregated account by the Successful Bidder or Debtors pending further order of the Court or mutual agreement of the parties.

B. The counterparties to the Assumed Contracts and Assumed Leases must file any objections to the assumption and assignment of the Assumed Contracts and Assumed Leases or the Pre-Petition Cure Amount at least three business (3) days prior to the Auction (the "Assumption/Assignment Objection Deadline") and shall serve such objection so that the objection is actually received by: (i) counsel for Debtors; (ii) counsel to the Stalking

Horse, if any; (iii) the Office of the United States Trustee; (iv) counsel for the UCC; (v) counsel for Lender; and (vi) counsel for Zachary Taylor by the Assumption/Assignment Objection Deadline. Any and all objections must state with detail: the grounds for the objection; if the objecting party proposes an alternative cure amount and the amount thereof; and the basis for the calculation of the proposed alternative amount;

C. Any party who fails to object by the Assumption/Assignment Objection Deadline shall be forever barred from objecting to the assumption and assignment of its respective executory contract or unexpired lease;

D. Debtors will make cure payments within thirty (30) days after the date of the closing of the sale of the Purchased Assets and any letters of credit associated with any assumed contract or assumed lease will be replaced by a new letter of credit provided by the Successful Bidder; and

E. Debtors may file one or more supplemental list or lists of Assumed Contracts and Assumed Leases (the "Supplemental List"), if necessary. Debtors' shall serve to the counterparties to the Assumed Contracts and Assumed Leases on the Supplemental List a supplemental Assumption and Assignment Notice substantially in the form and containing the information described above. The counterparties with contracts or leases on the Supplemental List shall have five (5) calendar days from service of the Supplemental List to file an objection in accordance with the requirements outlined above and serve upon the parties described above.

27. The following procedure for rejection of contracts is hereby approved:

    A. Promptly after both the receipt of the Contract Lists from the Successful Bidder and Closing, Debtors will notify each counter-party to a contract that will be rejected of such rejection (the "Rejection Notice"). Notice shall be effective upon mailing. Objections, if any, to the rejection (an "Objection") must be filed and served on counsel for Debtors, Lender, and the UCC within fourteen (14) days after the Rejection Notice was mailed (the "Rejected Contract Deadline"). Any claim for damages arising from the rejection of any such contract must be made by a an official Proof of Claim form filed with the Court within twenty-one (21) days of such rejection or such claims shall be barred;

    B. Upon receipt of a timely Objection, Debtors may request that the Bankruptcy Court set a hearing on the Objection. If the Bankruptcy Court authorizes the rejection, the rejection shall be deemed to have been effective upon the Petition Date;

    C. Any party who fails to object by the Rejected Contract Deadline shall be barred from objecting to the rejection of the contract. In such instances, rejections of executory contracts or unexpired leases will be effective as of the Petition Date upon notice to the party that its contract or unexpired leases has been rejected.

**Notice of Auction and Sale Hearing**

26. Within three (3) business days of the entry of this Order, Debtors shall give notice of the Bidding Procedures, and the Auction and Sale Hearing, by mailing a copy of the Auction

and Sale Notice which is attached to the Motion as Exhibit C and is hereby approved, by first class mail, to the following (collectively, the "Notice Parties"):

    (i)      The Office of the United States Trustee;

    (ii)     UCC counsel;

    (iii)    Counsel for Lender;

    (iv)    All parties to contracts and leases with Debtor;

    (v)     All applicable federal and state taxing authorities;

    (vi)    All parties who have requested notice in the case; and

    (vii)   All interested parties who executed confidentiality agreements in anticipation of a possible bid on the Purchased Assets.

    (viii)  Counsel to Zachary Taylor

.

**Signed on June 09, 2015**

                                 /s/ Marci B. McIvor
                                 Marci B. McIvor
                                 United States Bankruptcy Judge

    (ix)